## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MARILYN R. LEWIS**                                   **CIVIL ACTION**

**VERSUS**                                             **NO. 12-0944**

**JEFFERSON PARISH HOSPITAL SERVICE**                  **SECTION: "G"(5)**
**DISTRICT NO.2, PARISH OF JEFFERSON**

### ORDER AND REASONS

Before the Court is Defendant Jefferson Parish Hospital Service District No. 2, Parish of Jefferson's ("Defendant") Motion for Summary Judgment,[1] wherein it seeks the dismissal of Plaintiff Marilyn R. Lewis's ("Lewis") complaint. After considering the complaint, the pending motion, the memorandum in support, the opposition, the reply, the record, and the applicable law, the Court will grant the pending motion and dismiss Lewis's complaint with prejudice.

### I. Background

#### A. Factual Background

Lewis alleges that on August 15, 2011, she was hired by Defendant as a "Patient Access Representative II."[2] She worked in the office of a physician, Dr. McKinnie, in the complex of Defendant in Metairie, Louisiana. Lewis avers that one of her "main job duties was checking in and checking out patients for treatment."[3] Lewis notes that she was hired by Defendant on a 90-day probationary period and is an African-American woman.[4]

---

[1] Rec. Doc. 30.

[2] Rec. Doc. 1 at ¶ 3.

[3] *Id.*

[4] *Id.* at ¶¶ 3-4.

Lewis claims that Karen Copeland ("Copeland"), a Caucasian woman, was office manager for Defendant.[5] Lewis contends that throughout her employment with Defendant, she and her African-American co-worker, Bergeron, were "treated unfairly and harshly by Ms. Copeland."[6] Specifically, Lewis alleges that Copeland "talked about [Lewis] and Ms. Bergeron sarcastically and in a negative manner and frequently raised her voice at them. On the other hand, Ms. Copeland treated Ms. Muffett[7] [a Caucasian co-worker] politely and respectfully."[8]

Lewis claims that on November 17, 2011, she was informed that she was being put on administrative leave pending an investigation into allegations made by Copeland.[9] Lewis contends that Dr. McKinnie had a meeting with Copeland to discuss the work performance of Ms. Muffett and Bergeron, however, at the meeting, only Ms. Muffett's work related problems were discussed; nonetheless, on November 29, 2011, Copeland terminated Lewis and "was given the vague and general reason that she had not satisfied her probation."[10] Lewis claims that around the same time Bergeron was also terminated for "not satisfying her probation," but that Ms. Muffett had no disciplinary action taken against her.[11]

---

[5] *Id.* at ¶ 6.

[6] *Id.* at ¶ 7.

[7] In support of the pending motion, Lewis refers to this individual as "Ms. Muffet." Elsewhere she is referred to as "Ms. Mayet." The record reflects that her full name is Muffett Mayet. *See* Rec. Doc. 30-9 (Deposition of Ms. Mayet).

[8] Rec. Doc. 1 at ¶ 7.

[9] *Id.* at ¶ 8.

[10] *Id.*

[11] *Id.*

Lewis contends that she was terminated by Copeland on the basis of her race.[12] Lewis brings a cause of action under the Louisiana Employment Discrimination Law[13] and Title VII of the Civil Rights Act of 1964,[14] claiming that Defendant "failed to have in full force and effect any effective policy regarding illegal workplace discrimination."[15]

### B. Procedural Background

Lewis filed her action on April 13, 2012, invoking this Court's jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction). On June 3, 2013, Defendant filed the pending motion for summary judgment.[16] On June 11, 2013, Lewis filed an opposition.[17] On June 17, 2013, with leave of court, Defendant filed a reply.[18]

## II. Parties' Arguments

### A. Defendant's Memorandum in Support

In support of the pending motion, Defendant argues that in interrogatories, Lewis was asked to describe and specify each and every alleged discriminatory act that she was subjected to by Defendant, to which she responded in part that she "was subjected to a hostile work environment because of her race," and that Copeland treated her in a cold, sarcastic, hostile, and negative manner.[19] In further interrogatory responses, Lewis claimed that Copeland terminated the only African-American employees

---

[12] *Id.* at ¶ 10.

[13] La. R.S. § 23:301, *et seq.*

[14] 42 U.S.C. § 2000e, *et seq.*

[15] Rec. Doc. 1 at ¶¶ 11-12.

[16] Rec. Doc. 30.

[17] Rec. Doc. 31.

[18] Rec. Doc. 36.

[19] Rec. Doc. 30-2 at pp. 2-3.

in the office, but that Ms. Mayet, a Caucasian employee with performance problems had remained an employee.[20] However, Defendant notes that Lewis admits that Copeland never used racial slurs or epithets in her presence.[21]

Defendant articulates its rationale for terminating Lewis. Defendant explains that Copeland was Lewis's direct supervisor during most of her employment with Defendant, and that in order to satisfy her probation and receive a recommendation for permanent employment she was required to perform the following non-exhaustive list of tasks:   "(1) accurately enter patient registration and demographic information; (2) schedule patients; (3) accurately and efficiently take telephone messages; (4) accurately collect co-pays and post money into the computer; (5) create credit card, check and cash batches and create posting batches of charges."[22] Defendant cites to the deposition of Copeland, where she stated that Lewis did not accurately perform checkout procedures.[23]

In addition, Defendant references the deposition of Dr. McKinnie, who recalled Copeland "making comments fairly early on about dissatisfaction with office personnel," and specifically complained about Lewis "not doing things the way Copeland or [Defendant] wanted them done."[24] Moreover, Copeland kept an ongoing log regarding discussions she had with Lewis entitled "Verbal Discussions, Marilyn Lewis."[25] According to this log, Lewis "failed on multiple occasions to properly attach paperwork and reports to patient charts," and allegedly made several other job-related errors.[26]

---

[20] *Id.* at p. 3.

[21] *Id.*

[22] *Id.* (citing Deposition of Copeland, Rec. Doc. 30-4 at pp. 13-16).

[23] *Id.* (citing Rec. Doc. 30-4 at p. 20:18-20).

[24] *Id.* at p. 5.

[25] *Id.* (citing Rec. Doc. 30-4 at pp. 54:20-55:4).

[26] *See id.*

4

Defendant notes that when the issues outlined in Copeland's log were described to Dr. McKinnie, he stated that the log painted "the picture of someone who's incompetent at their job."[27]

Therefore, Defendant argues that Copeland concluded that Lewis did not meet Defendant's performance standards in the following categories: "(a) Makes others feel welcome; (b) Treats others with dignity and respect; (c) Performs Checkout procedure; (d) Balances charges and payments; (e) Handles patient account inquiries; (f) Obtain authorizations for visit/procedure…Verify patients insurance and benefits; (g) Enter all patient demographic and insurance information in computer accurately; (h) Assess patient accounts for collections, past due balances and discharged patients; and (I) Attends all required in-services."[28] Further, Defendant contends that several other employees observed Lewis's alleged poor job performance, such as Ann Newfield, Operations Supervisor and Copeland's former supervisor, Wanda Genovese, Clinic Supervisor for East Jefferson Cardiology Consultants, and Nurse Muffett Mayet, who worked with Lewis.[29]

Defendant maintains that Copeland "brought everything to Nicole Yeatman in human resources, who then met with Copeland's supervisors." Copeland recommended that Lewis not be extended an offer of permanent employment, and then "[h]uman resources decided to further investigate."[30] Copeland and Joe Robertson, a human resources employee, met with Lewis and she was informed that she would be placed on paid administrative leave while Copeland's claims about her were investigated.[31] On November 29, 2011, Lewis was informed that Defendant decided not to extend her permanent employment.[32]

---

[27] *Id.* at p. 6 (citing Rec. Doc, 30-10 at pp. 52:24-53:3).

[28] *Id.* (citing Probationary Evaluation Form, Rec. Doc. 30-6).

[29] *Id.* at pp. 6-8 (citing portions of these individuals depositions).

[30] *Id.* at p. 8.

[31] *Id.*

[32] *Id.*

Defendant claims that the burden rests of Lewis to first establish a *prima facie* case of racial discrimination by showing:

> (1) [s]he is a member of a protected class, (2) [s]he was qualified for the position at issue, (3) [s]he was the subject of an adverse employment action, and (4) [s]he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.[33]

It is only after the plaintiff makes a *prima facie* case that "an inference of discrimination is raised and the burden of production shifts to the employer to come forward with an alternative, non-discriminatory explanation for the employment action.[34] If the defendant submits a legitimate, non-discriminatory reason for discharging the employee, then the burden shifts back to the plaintiff who "must produce substantial evidence" that the defendant's stated reasons for termination is merely a pretext for discrimination.[35]

Defendant argues that Lewis cannot meet her initial burden to establish a *prima facie* case of racial discrimination.[36] Defendant notes that one of the job requirements to be a Patient Access Representative II with Defendant is that the candidate be a high school graduate.[37] However, it is undisputed that Lewis did not graduate from high school.[38] Therefore, Defendant argues that Lewis did not satisfy one of the requirements for the job from which she was terminated.[39]

Concerning the fourth factor, Defendant notes that Lewis has argued she was treated differently than Ms. Mayet, who is Caucasian; however, Defendant contends that Lewis was a Patient Access

---

[33] *Id.* at p. 12 (citing *Wesley v. Gen Drivers, Waterhousemen & Helpers Local 745*, 660 F.3d 211, 213-14 (5th Cir. 2011)).

[34] *Id.*

[35] *Id.* (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

[36] *Id.* at p. 13.

[37] *Id.* (citing Rec. Doc. 30-13 (job description for Patient Access Representative II)).

[38] *Id.* (citing Deposition of Lewis, Rec. Doc. 30-12 at p. 11:10-12).

[39] *Id.*

Representative II and Mayet is (and was) a registered nurse.[40] Further, Defendant argues that Mayet is not similarly situated to Lewis because Mayet was not a new employee on a 90-day probationary period.[41] Defendant maintains that employees "'who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated.'"[42] Defendant submits that there "is no evidence that Lewis's work responsibilities were in any way similar to those of Mayet," and therefore even if she was treated differently than Mayet, this is "of no moment."[43] Therefore, Defendant contends that Lewis cannot prove she was either qualified for the position, or that she was treated differently from someone outside the protected class that was similarly situated, and thus fails to establish a *prima facie* case, therefore entitling Defendant to "judgment as a matter of law."[44]

However, Defendant further argues that even if Lewis can make a *prima facie* case, her claims still fail because she cannot offer substantial evidence that Defendant's reason for her termination was a mere pretext for discrimination.[45] In addition to Lewis's alleged job performance deficiencies, Defendant notes that Copeland "was not the ultimate arbiter of Lewis's fate."[46] Instead, it was the human resources department that considered Copeland's recommendation and then made the final employment decision.[47]

---

[40] *Id.*

[41] *Id.*

[42] *Id.* at pp. 13-14 (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009)).

[43] *Id.* at p. 14.

[44] *Id.*

[45] *Id.*

[46] *Id.* at p. 15.

[47] *Id.*

Defendant contends that pretext can be shown "'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'"[48] Defendant argues that there is no evidence of disparate treatment, because Mayet, as discussed above, is not similarly situated.[49] Further, Defendant avers that there is no competent evidence of the falsity of Defendant's proffered reason for Lewis's termination. In addition, Defendant argues that under Fifth Circuit precedent, when an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but rather whether the employer reasonably believed the employee's allegation and acted on it in good faith.[50] Lastly, Defendant contends that Lewis has no evidence of a "mixed motive," because there is no evidence of Copeland using racial slurs and that Lewis's "efforts to second guess" Defendant's decision does not create a genuine issue of material fact.[51]

### B. Lewis's Opposition

In opposition to the pending motion, Lewis states several facts she claims supports a *prima facie* case of race discrimination. Lewis notes that she had worked for over 15 years in the medical office of Dr. McKinnie and therefore was "qualified to perform the duties of her job position [with Defendant]."[52] Lewis also notes that Dr. McKinnie testified that she was an "exceptional" and "superb" employee. After her termination, Lewis was replaced by an individual outside of the protected class, a Caucasian female.[53]

Lewis also alleges facts in support of her claim that Defendant's stated reason for termination is pretextual. Lewis argues that Dr. McKinnie, based on his years working with her, "knows Ms. Lewis' job

---

[48] *Id.* at p. 16 (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (internal quotation marks omitted)).

[49] *Id.* at pp. 17-18.

[50] *Id.* (citing *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010)).

[51] *Id.* at pp. 19-22.

[52] Rec. Doc. 31 at p. 3.

[53] *Id.* at pp. 3-4.

performance and ability better than anyone," and stated that the things described in Copeland's log painting Lewis as an incompetent employee was "not the person that he knew."[54] Defendant notes that Dr. McKinnie did not want Lewis to be terminated, and in a meeting with Human Resources he stated that Copeland was factually misleading in a document she presented because it indicated that Copeland tried repeatedly to meet with him about Lewis's performance, but that he was unresponsive, which he denies.[55] Defendant also directs the Court to the deposition of Ann Newfield, Copeland's direct supervisor, who testified that a doctor's recommendation is "significant."[56] Lewis argues that Copeland ignored Dr. McKinnie's opinion and initiated the termination procedures without his knowledge or input and "despite his insistence to further train Ms. Lewis."

Lewis also argues that Copeland's evaluation and recommendation comprised the entire basis of the decision to terminate Lewis.[57] Further, permanent employment was automatically extended to probationary employees absent a recommendation for termination by an employee's supervisor.[58] Lewis cites the deposition of several members of Defendant's management team who ultimately had the authority to terminate Lewis, and stated that they relied on Copeland's recommendation.[59] Lewis also claims that any alleged performance issues were a result of Copeland's failure to properly train her, specifically with regard to Defendant's computer system.[60]

---

[54] *Id.* at p. 4.

[55] *Id.* at p. 5.

[56] *Id.* at p. 6.

[57] *Id.*

[58] *Id.* at pp. 6-7.

[59] *Id.* at p. 7.

[60] *Id.* at pp. 7-10.

Lewis also argues that she has evidence of disparate treatment by Copeland, who allegedly treated other employees well, but treated Lewis and Bergeron, another African-American female employee, poorly and with disrespect.[61] Lewis also notes that she and Bergeron were prohibited by Copeland from wearing their uniforms until they completed their probationary period, but that they were the only employees subjected to this rule.[62] In addition, Lewis submits evidence that Copeland only kept a "Verbal Discussions" document for Lewis and Bergeron, but not for Mayet, a Caucasian employee with alleged performance issues.[63] Moreover, Lewis claims that Mayet had numerous performance issues raised by Copeland, but that no adverse employment actions were taken against her.[64]

Based on these factual allegations, supported by deposition testimony, Lewis argues that she has established a *prima facie* case of race discrimination, and notes that Defendant has only challenged the second and fourth prongs. With regard to her qualification, Lewis argues that under Fifth Circuit precedent "a plaintiff only has to show she has the necessary qualifications for her job at the time of the adverse action, meaning that she had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered her unfit for the position for which she was hired."[65] In response to Defendant's claim that Lewis was not qualified for the position, Lewis states:

> [Defendant] contends that because Ms. Lewis did not graduate from high school, she was not qualified for her job. This is grasping at straws. Ms. Lewis had over 15 years experience working in the medical setting, specifically in doctor['s] offices. The fact that she does not have a high school diploma does not render her unable to do the Patient Access Representative II job. She did not suffer any physical disability or lose a professional license. In the Competency Checklist, Ms. Copeland  marked Mr. Lewis as

---

[61] *Id.* at pp. 10-11.

[62] *Id.*

[63] *Id.* at p. 12.

[64] *Id.*

[65] *Id.* at p. 15 (citing *Bienkowski v. Am Airlines, Inc.*, 581 F.2d 1503, 1506 & n. 3 (5th Cir. 1988)).

competent on several skills required to do her job position. This argument is wholly without merit.[66]

Concerning the fourth prong, Lewis argues that she need only show that she was replaced by someone outside of the protected class, but does not need to show that she was treated less favorably than other similarly situated employees outside of the protected class, and it is undisputed that Lewis was replaced by a Caucasian individual.[67] Therefore, Lewis posits she has established a *prima facie* case.

Assuming she has established a *prima facie* case, Lewis further contends that she has produced sufficient evidence to create a genuine issue of material fact that Defendant's alleged reason for her termination was a pretext for racial discrimination. First, Lewis argues that she has submitted "ample evidence" to dispute that she was terminated for not meeting performance standards. She highlights the deposition of Bergeron and Dr. McKinnie's statements that she was an exceptional employee.[68] Lewis avers that her testimony, coupled with that of Dr. McKinnie and Bergeron, "cast serious doubt on Ms. Copeland's alleged basis for terminating Ms. Lewis."[69] Lewis also maintains that she has submitted evidence that Lewis was treated less favorably than Mayet.[70]

In addition, Lewis notes that in employment discrimination cases, the focus is on the final decision maker in determining whether an adverse employment action was taken because of an unlawful motive.[71] However, Lewis invokes the "cat's paw" theory, where an employee can impute a co-worker's unlawful motive to the ultimate decisionmaker if that employee had influence over the decision maker,

---

[66] *Id.*

[67] *Id.*

[68] *Id.* at pp. 17-19.

[69] *Id.* at p. 19.

[70] *Id.* at pp. 19-20.

[71] *Id.* at pp. 20-21 (citing *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002)).

thereby establishing a causal link between the unlawful motive and the adverse employment action.[72] Lewis reiterates her argument that Copeland's recommendation was the entire basis for Defendant's decision to terminate her.[73] Finally, Lewis argues that evidence of racially derogatory remarks is not required to prove race discrimination, and that in the absence of such evidence she should still defeat summary judgment.

### C. Defendant's Reply

In reply, Defendant disputes Lewis's characterization of Dr. McKinnie's role in hiring and personnel matters.[74] Defendant explains that Dr. McKinnie was employed by Defendant and had no ownership stake. When he joined Defendant, he was asked to bring over four employees from his previous office, but normally hiring decisions are made by the office manager, and not the physician.[75] Two of Dr. McKinnie's recommendations accepted employment with Defendant, Lewis and Bergeron, and were placed on a probationary period. Defendant also notes that shortly after Dr. McKinnie began work with Defendant, he injured his back and "worked approximable one-half day [in the office] twice per week," during Lewis's probationary period.[76] Therefore, Defendant contends that Dr. McKinnie was not in a better position than Copeland to evaluate Lewis's performance.

Next, Defendant again argues that Lewis fails to establish a *prima facie* case. Defendant focuses on Lewis's lack of a high school degree, which would have made Lewis's employment a violation of Defendant's policy.[77] Defendant explains:

---

[72] *Id.* at p. 21 (citing *Gollas v. Univ. of Tex. Health Sci. Ctr.*, 425 F. App'x 318, 326 (5th Cir. 2011)).

[73] *Id.* at pp. 22-23.

[74] Rec. Doc. 36.

[75] *Id.* at p. 2 (citing deposition testimony).

[76] *Id.* at pp. 2-3.

[77] *Id.* at p. 4 (citing Affidavit of Nicole Yeatman, Rec Doc. 36-1 at ¶ 32).

> Although Lewis and [Defendant] differ on the precise standard regarding proof of a *prima facie* case, it is undisputed that a plaintiff in a Title VII race discrimination claim must show, *inter alia*, that she was qualified for the position in question. Notwithstanding Lewis' own belief about her qualifications and work experience, Dr. McKinnie's opinion about her work at Tulane and Bergeron's opinion about her capabilities, [Defendant] is well-within its right to require that its employees possess certain academic credentials. Because Lewis did not possess the academic credentials required by [Defendant], she cannot show that she was qualified for the position in question. Accordingly, Lewis cannot establish a *prima facie* case of race discrimination.[78]

With regard to the dispute as to the correct standard, Defendant notes that the standard cited by Lewis does not require that she show, for the purposes of establishing a *prima facie* case, that she was treated less favorably because of her membership in a protected class than another similarly situated person that was not a member of the protected class; in contrast, the authority cited by Defendant does require such a showing. Defendant argues that the cases cited by Lewis predate its authority, but that regardless both iterations of the standard require a showing that the person was qualified for the position.[79]

Once again assuming that Lewis has made a *prima facie* case, Defendant argues that Lewis nonetheless fails to produce substantial evidence of pretext. Defendant avers that Lewis's contention that Defendant's reason for termination is unworthy of credence is based upon "incompetent, inadmissible testimony," because Dr. McKinnie admits he rarely witnessed Lewis's performance during her probationary period due to his injury.[80] Further, Defendant notes that Lewis's argument relies on Bergeron's declaration to suggest that Lewis was competent and qualified. However, Defendant maintains that pursuant to Federal Rule of Evidence 701, such opinion testimony is inadmissible and cannot suffice to defeat summary judgment.[81]

Finally, Defendant refutes Lewis's contention that it did not thoroughly evaluate Copeland's

---

[78] *Id.*

[79] *Id.* n.17.

[80] *Id.* at p. 5.

[81] *Id.* at p. 7.

complaints about Lewis.[82] In fact, Defendant cites to the deposition of Nicole Yeatman, of Human Resources, who states that she had several conversations with Copeland, reviewed various documents, and had conversations with other individuals regarding the complaints.[83]

### III. Law and Analysis

#### A. Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[84] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence but refrains from making credibility determinations or weighing the evidence."[85] All reasonable inferences are drawn in favor of the nonmoving party, but "'conclusory allegations supported by a conclusory affidavit will not suffice to require a trial.' This is true even if the movant cannot demonstrate contrary facts by specific affidavit recitation to rebut the conclusory affidavit."[86] If the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[87]

Because factual disputes may not be resolved on summary judgment, a plaintiff need not offer all of its evidence, but rather only enough so that a jury *might* return a verdict in its favor.[88] If the

---

[82]  *Id.*

[83]  *Id.* at p. 8.

[84]  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[85]  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[86]  *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993) (quoting *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986)).

[87]  *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147-48 (5th Cir. 1992).

[88]  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991).

nonmovant would bear the burden of proof at trial on a claim, the movant may simply point to the absence

of evidence, which then returns the burden on the motion for summary judgment to the nonmovant.[89]

Then, the nonmovant must point to competent evidence that there is an issue of material fact so as to

warrant trial.[90] To defeat summary judgment, the nonmovant must direct the court's attention to specific

evidence in the record to establish an issue of material fact as to each claim upon which it will bear the

burden of proof at trial.[91] "The opponent must meet the movant's affidavits with opposing affidavits that

set out specific facts showing an issue for trial."[92]

### B. Burden Shifting Scheme- Generally

In addition to the standard applied to motions for summary judgment, the United States Supreme

Court has developed a burden shifting scheme for claims arising under Title VII of the Civil Rights Act

of 1964, to deal with cases in which discrimination can be proved only by circumstantial evidence.[93] It

is undisputed that such a burden shifting scheme is appropriate here, as Lewis has not presented direct

evidence of racial discrimination. The burden first rests on the plaintiff to prove a *prima facie* case of

discrimination.[94] "If a plaintiff is successful in establishing a *prima facie* case of discrimination, [there

is a presumption of discrimination] and the burden then shifts to the defendant to produce a legitimate,

nondiscriminatory justification for its actions."[95] "Once the employer produces a legitimate

nondiscriminatory reason, the presumption of discrimination dissipates. The plaintiff bears the ultimate

---

[89] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (per curiam).

[90] *Id.*

[91] *Rizzo v. Children's World Learning Ctrs.*, 84 F.3d 758, 762 (5th Cir. 1996).

[92] *Travelers,* 7 F.3d at 1206-07.

[93] *See Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133 (2000); *see also Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir. 2001).

[94] *Evans*, 246 F.3d at 350.

[95] *Id.*; *Wallace*, 271 F.3d at 219.

burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status."[96] "To carry that burden, the plaintiff must produce substantial evidence of pretext."[97] The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.[98]

### C. Analysis

#### 1. Correct Standard for a *Prima Facie* Case

As noted in the reply brief submitted by Defendant, the parties have cited slightly different standards regarding the requirements Lewis must meet to establish a *prima facie* case.[99] Lewis states the standard articulated by the Fifth Circuit in its 1999 decision *Shackleford v. Deloitte & Touche, LLP*,[100] which stated that a *prima facie* case is established if a plaintiff can prove she: "(1) is a member of a protected class; (2) was qualified for her position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class."[101] In contrast, Defendant cites the standard articulated in the Fifth Circuit's 2011 decision *Wesley v. General Drivers, Warehousemen and Helpers Local 745*,[102] where the Fifth Circuit stated that a *prima facie* case is established by a showing that:

> (1) [the plaintiff] is a member of a protected class, (2) [the plaintiff] was qualified for the position at issue, (3) [the plaintiff] was the subject of an adverse employment action, and (4) ***[the plaintiff]  was treated less favorably because of his membership in that***

---

[96] *Wallace*, 271 F.3d at 219.

[97] *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

[98] *Wallace*, 271 F.3d at 220.

[99] *See* Rec. Doc. 36 at p. 4 & n. 17.

[100] 190 F.3d 398 (5th Cir. 1999).

[101] *Id.* at 404.

[102] 660 F.3d 211 (5th Cir. 2011).

*protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.*[103]

As the emphasized portion above highlights, the fourth prong of the *prima facie* case is different in *Shackelford* and *Wesley*. However, this does not expose a split within the Fifth Circuit's jurisprudence on claims of racial discrimination. In *McDonnel Douglas Corp. v. Green*,[104] the landmark United States Supreme Court case that first established this burden shifting scheme, the Supreme Court recognized that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."[105] Therefore, the required elements necessary to establish a *prima facie* case vary depending on the situation presented. However, for the reasons explained below, the Court need not decide which of these standards applies to this case, because either standard would yield the same result.

### 2. Does Lewis Establish a *Prima Facie* Case?

Both parties' proposed standards are similar in that each includes a factor that requires that a plaintiff demonstrate she was qualified for her position. On this issue, Defendant has submitted evidence that one of the qualifications for the position of Patient Access Representative II is that the candidate be a high school graduate.[106] Lewis concedes in her deposition that she did not attend high school.[107] Moreover, through the affidavit of Nicole Yeatman, Director of Team Member Relations for Defendant,

---

[103] *Id.* at 213 (quoting *Lee*, 574 F.3d at 249) (emphasis added).

[104] 411 U.S. 792 (1973).

[105] *Id.* at 802, n. 13.

[106] Rec. Doc. 30-13 at p. 1.

[107] Rec. Doc. 30-12 at p. 3.

Defendant has submitted evidence that "it would have been against [Defendant's] policy to hire Lewis had it been known that Lewis did not possess a high school diploma."[108] Plaintiff does not dispute these facts or challenge the propriety of this qualification, but rather claims that the argument that she is not qualified is "wholly without merit" because Lewis has over 15 years experience "working in the medical setting, specifically in doctor's [sic] offices."[109] Plaintiff also cites *Bienkowski v. American Airlines, Inc.*,[110] to claim that she meets all of the position's qualifications because "she ha[s] not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered her unfit for the position for which she was hired."[111]

    *Bienkowski* was an age discrimination case under the Age Discrimination in Employment Act ("ADEA"), whereas here Lewis alleges race discrimination under Title VII of the Civil Rights Act of 1964. However, the Fifth Circuit has held that claims of race discrimination under Title VII and age discrimination under the ADEA are "evaluated under the same analytical framework."[112] In *Bienkowski*, the Fifth Circuit stated that "a plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action."[113] The court clarified that "[b]y this we mean that plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired."[114] Lewis asks this Court to

---

[108]  Rec. Doc. 36-1 at ¶ 32.

[109]  Rec. Doc. 31 at p. 15.

[110]  851 F.2d 1503 (5th Cir. 1988).

[111]  Rec. Doc. 31 at p. 15.

[112]  *Evans*, 246 F.3d at 349.

[113]  851 F.2d at 1506.

[114]  *Id.* n. 3.

narrowly construe "qualifications" based on *Bienkowski*. While it is true she did not "***lose*** a professional license" nor did some later "other occurrence" render her unfit for duty, the fact remains that she was never qualified for the position with Defendant because she did not have a high school diploma. The United States Court of Appeals for the First Circuit expressly recognized in *Loeb v. Textron, Inc.*,[115] that "basic qualifications for the job, in terms of ***degrees***, certificates, skills and experience" are relevant to this analysis.[116]

The Court notes that the *Bienkowski* court explicitly declined to follow *Loeb* in so far as *Loeb* created a presumption that "the fact that [a plaintiff] was hired initially indicates that he had the basic qualifications for the job, in terms of degrees, certificates, skills and experience."[117] However, the *Bienkowski* court did not take issue with the consideration of "degrees, certificates, skills [or] experience" in assessing whether a plaintiff was qualified, just the presumption described before. Therefore, here, the Court does not assume that because Lewis was initially hired that she had all the basic qualifications for the position. Moreover, the *Bienkowski* court's rejection of the *Loeb* court's presumption adds credence to Defendant's argument here. Lewis was initially hired on a probationary period by Defendant, despite not having a high school diploma. In fact, Defendant has submitted unrefuted evidence that Defendant was not aware of this fact when it hired her.[118] Without the *Loeb* presumption, the burden rests solely on Lewis to submit evidence that she was qualified in order to establish her *prima facie* case, which she cannot do because one of the qualifications for the position is a high school degree.

---

[115]   600 F.2d 1003 (1st Cir. 1979).

[116]   *Id.* at 1013, n. 10 (emphasis added).

[117]   851 F.2d at 1505-06.

[118]   *See* Rec. Doc. 36-1 at ¶ 32.

19

Further, in *Merwine v. Board of Trustees for the State Institutions of Higher Learning*,[119] the Fifth Circuit affirmed a district court entering a judgment notwithstanding the verdict, upon the district court's finding that the plaintiff failed to establish her qualification for the position, and thus failed to establish a *prima facie* case. There, it was uncontested that the plaintiff did not have the required degree for the position. Despite the introduction of evidence "to inform the jury that her qualifications and experience were equivalent to the average qualifications and experience of [an individual who held the required degree,]" the Fifth Circuit held that this evidence "fail[ed] to contradict or diminish in any way the simple, uncontested and stipulated fact that [the plaintiff] did not possess the published minimum educational requirement-the ALA-MLS degree-for the position of faculty librarian at MSU."[120] Therefore, the court held that "the conclusion that [the plaintiff] was not qualified for the position is indisputable and a jury verdict to the contrary could not have been reached by reasonable persons."[121]

Here, it is undisputed that Lewis did not have one such basic requirement – a high school degree. As such, Lewis did not "possess the necessary qualifications for [her] job at the time of the adverse action."[122] While Lewis attempts to rebut this conclusion by emphasizing her long experience

---

[119]  754 F.2d 631 (5th Cir. 1985).

[120]  *Id.* at 637.

[121]  *Id.* (footnote omitted). The Court notes that in *Merwine*, the plaintiff alleged discrimination in hiring, whereas here Lewis alleges that she was improperly **terminated** from her employment. However, the Court notes that it is undisputed that Lewis was on a probationary period at the time of her "termination," and she had never received an offer of permanent employment. In fact, Lewis has stated that the end of her employment with Defendant came about because she was not offered permanent employment at the end of her probationary period. *See* Rec. Doc. 31 at pp. 6-7. Therefore, this case falls somewhere in the middle of a discriminatory hiring action and one for discriminatory termination. Nonetheless, as discussed above, the *Bienkowski* court made clear that courts within this Circuit are to make no presumption that an employee has the basic qualifications for a job merely because she was initially hired. 851 F.2d at 505-06. Therefore, the *Merwine* court's recognition that a plaintiff's degrees, or lack thereof, is relevant to an ultimate determination of his or her qualifications to establish a *prima facie* case of discrimination, is informative on the Court's analysis here.

[122]  *See Bienkowski*, 851 F.2d at 1506.

in the field before her employment with Defendant, the *Merwine* court expressly rejected that such evidence could compensate for a plaintiff's failure to hold the "minimum educational requirement" necessary for the position.[123] Therefore, Lewis cannot establish a *prima facie* case of racial discrimination and fails to defeat the pending motion for summary judgment with regard to her claim of racial discrimination under Title VII of the Civil Rights Act of 1964.

### 3. Remaining State Law Claim

In the briefing associated with this motion, both parties appear to disregard that Lewis also alleged a state law cause of action under the Louisiana Employment Discrimination Law, La. R.S. § 23:301 *et seq*,[124] over which this Court has pendant jurisdiction even after dismissing the only federal claim.[125] While the pending motion requests dismissal of Lewis's entire complaint, the substance of the motion only addresses Lewis's federal cause of action. Section 1367(c)(3) specifically grants district courts the discretion to retain or decline supplemental jurisdiction once it has dismissed all claims over which it has original jurisdiction, such as Lewis's claim under Title VII.[126]

The United States Supreme Court in *United Mine Workers of America v. Gibbs*,[127] instructed that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."[128] However, the Fifth Circuit has held that "[w]e look

---

[123] 754 F.2d at 637.

[124] Rec. Doc. 1 at ¶ 12.

[125] 28 U.S.C. 1367(c)(3).

[126] *See Cudd Pressure Control Inc. v. Roles*, 328 F. App'x 961, 966 n. 2 (5th Cir. 2009)

[127] 383 U.S. 715 (1966).

[128] *Id.* at 726.

to federal employment discrimination jurisprudence when interpreting Louisiana's anti-discrimination laws."[129] Moreover, in the specific context of a claim under the Louisiana Employment Discrimination Law, the Fifth Circuit has required a plaintiff to establish the same *prima facie* case of race discrimination as required under federal Title VII claims. As the standard applicable to Lewis's federal and state law claims is identical, and Lewis's claims fail under that standard, it would be futile for this Court to decline pendant jurisdiction over the remaining state law claim so that she could refile in the appropriate state court. Therefore, the Court will dismiss Lewis claim under the Louisiana Employment Discrimination Law as well.

## IV. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment[130] is **GRANTED** and Lewis's complaint is **DISMISSED WITH PREJUDICE**;

**NEW ORLEANS, LOUISIANA**, this  3rd  day of July, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[129] *Baker v. FedEx Ground Package Sys. Inc.*, 278 F. App'x 322, 327 (5 th Cir. 2008) (citing *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002)).

[130]  Rec. Doc. 30.

22